## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| XAVIER BECERRA, in his official | ) | |
| capacity as Secretary of Health and Human | ) | |
| Services; U.S. DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES; | ) | |
| JESSICA S. MARCELLA, in her official | ) | |
| capacity as Deputy Assistant Secretary for | ) | |
| Population Affairs; and OFFICE OF | ) | |
| POPULATION AFFAIRS, | ) | |
| | ) | |
| *Defendants*. | ) | |

## DECLARATION OF ALAN GOODWIN

I, Alan Goodwin, state as follows:

1.     My name is Alan Goodwin**,** and I am over the age of 18, of sound mind, and competent to make the statements contained within this declaration.

2.     I obtained a Master of Business Administration degree from Florida State University in 1992.

3.     I am currently an Assistant Commissioner at the Tennessee Department of Health and I have served in that role since August 25, 2021.

4.     Prior to serving in that role, I served in the United States Air Force for 21 years and then with a very large Federally Qualified Healthcare Center system for an additional 6 years.

5.     Since 1972, Tennessee's Department of Health has received Title X grants to run its Title X program, known as the Tennessee Family Planning Program.

1

6.      In recent years, our Title X funding has been approximately $7.1 million annually.

7.      With those grant funds, the Family Planning Program provides the funding for the Department's Community Health Services ("CHS") program to provide counseling on a variety of family planning options and related services, like abstinence, sterilization, pregnancy testing, natural family planning, birth control and fertility methods.  Our Program has also provided counseling on termination, adoption, and foster care.  No matter the service, our Program offers information and counseling to the extent: (a) the patient inquires about a family-planning option, and (b) the information and counseling services are legal in the State of Tennessee.

8.      For minors, our Program provides confidential services, promotes abstinence and parental involvement, and complies with all mandatory reporting laws.

9.      Although our Program does not contain any residence, insurance status, or income level restrictions on patients who can access our services, in my experience, most of the patients that visit our offices are uninsured Tennesseans that cannot afford care elsewhere.

10.     Most of the patients that visit one of our 99 sites will visit with a nurse, or other qualified practitioner, to discuss family planning options.  Among other reasons, to ensure Tennessee's compliance with its Title X obligations, we have drafted and distributed a "Nursing Protocol" that instructs these nurses regarding the topics that should be discussed with patients. Nursing Protocols are standard instructive guidelines for nursing staff in clinical settings.

11.     A copy of the Protocol in effect in July of 2022 is attached to this declaration as Exhibit "A."  That protocol has not been changed since July of 2022 and remains in effect.

12.     In addition to the Protocol, nurses and other qualified practitioners are also given pamphlets and other literature about family planning options available in Tennessee.  Our program considers foster care and adoption as legal family planning options in Tennessee, so we expect the nurses, or other qualified practitioners, in our offices to explain these options to patients if inquired about by the patient.  Pamphlets about foster care and adoption that were used in 2022 and that are used today are collectively attached as Exhibit "B" to this declaration.

13.     Because of our 50-year track record, our Program has the capacity, staff, and expertise to administer Title X funds with integrity and without a gap in services to Tennesseans, as HHS has recognized.

14.     Our office is proud of this track record and the ability to serve Tennesseans in need. In recent years, our Title X funding has allowed us to serve well over 40,000 Tennesseans annually from our network of 99 sites.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my

2

knowledge.   Executed this 18th day of October 2023.

/s/ _____
Alan Goodwin

3

# PREGNANCY TEST CONDUCTED IN A FAMILY PLANNING VISIT

**GENERAL INFORMATION**

Patients requesting/requiring pregnancy tests at the Health Department should be tested on that day and only deferred if unable to accommodate client that day.

**SUBJECTIVE**

- Complete medical history
- Complete sexual history (5Ps)
  - Practices (vaginal, anal, oral)
  - Partners (number, gender and concurrency)
  - Protection (from STDs/condom use)
  - Past STD history (past personal history and partner history if known)
  - Pregnancy prevention – current and previous methods used, client's preference
- Assess for victimization (examples - sexual or physical abuse, human trafficking, intimate partner/ domestic violence)
- Assess social support system
- Reproductive life plan
- Feelings about possible pregnancy
- Date of LMP
  - If postpartum, use delivery date to calculate EDD and EGA for positive tests
- Dates of unprotected sexual intercourse since LMP

**OBJECTIVE**

- Urine pregnancy test

**ASSESSMENT**

- Positive pregnancy test
- Negative pregnancy test

**PLAN**

- Discuss test results clearly and objectively.
- Patients with positive pregnancy test must be offered the opportunity to be provided information and counseling regarding all options that are legal in the State of Tennessee. Provide unbiased,  patient centered, trauma-informed counseling for the option(s) selected by the patient.
- STD Testing
  - Positive pregnancy test result:
    - Collect urine GenProbe for chlamydia and gonorrhea
    - Blood sample for RPR, HIV, HCV
  - Negative pregnancy test result
    - Screen for symptoms, offer testing

# EXHIBIT A

## **Pregnancy test positive**

- Calculate estimated gestational age and estimated due date
- Review normal signs/symptoms of pregnancy
- Review warning/danger signs in pregnancy
  - Severe pain
  - Bleeding
  - Dizziness, lightheadedness or syncope
  - Fever
- Provide information about maintaining the health of the mother and unborn child during pregnancy:
  - Importance of early prenatal care – Immediate prenatal care is imperative for patients with a history of pre-term labor
  - Importance of nutrition
  - Provide prenatal vitamins with folic acid
  - Offer appropriate vaccinations
- Stress importance of good dental care during pregnancy and refer if applicable
- Enroll or refer eligible clients to WIC, CHANT, and Presumptive TennCare
  - if patient is not Presumptive TennCare eligible, refer patient to other prenatal care resources and programs
- Advise patient to avoid:
  - Smoking including e-cigarettes and other inhaled nicotine delivery devices.
    - Refer to Baby and Me Tobacco Free Program (BMTFP) if applicable
    - TN Tobacco Quit Line 1-800-QUIT NOW if applicable
  - Alcohol
    - Refer to TN Redline (1-800-889-9789) if applicable
  - Illicit and controlled substance use
    - Refer to TN Redline (1-800-889-9789) if applicable
  - Fish containing high mercury (shark, swordfish, king mackerel, or tilefish)

## **Pregnancy test NEGATIVE**

**Actively seeking pregnancy**
- Refer to PHN Protocols as needed or desired by patient
  - Preconception Health Services (PHN Protocol 2.105)
  - Fertility Awareness Based Methods (PHN Protocol 2.090)
  - Basic Infertility Counseling (PHN Protocol 2.011)
- Encourage evaluation by PCP or provider

**Not actively seeking pregnancy or not actively preventing pregnancy**
- Provide contraceptive counseling if requested
  - Offer Same Day Start as requested (PHN Protocol 2.010)
  - Offer Same Day Insertion and referral for LARC (if requested and available)
  - Offer ECP or ECP prescription as requested (PHN Protocol 2.080)
- Discuss preconception health, including folic acid (PHN Protocol 2.105, 3.180)

# EXHIBIT A

**REFERENCES**

Gavin L, Moskosky, S., Carter, M. et al. Providing Quality Family Planning Services-Recommendations of CDC and the U.S. Office of Population Affairs, 2014. MMWR Morbidity and Mortality Weekly Report 2014;63 (No. RR-04).

Gavin L, Pazol K. Update: Providing Quality Family Planning Services-Recommendations from CDC and the U.S. Office of Population Affairs, 2015. MMWR Morbidity and Mortality Weekly Report 2016;65:231–234.

Gavin L, Pazol K. Update: Providing Quality Family Planning Services-Recommendations from CDC and the U.S. Office of Population Affairs, 2017. MMWR Morbidity and Mortality Weekly Report 2017;66:1383-1385.

https://www.cdc.gov/zika/hc-providers/reproductive-age/reproductive-planning.html

https://www.cdc.gov/zika/hc-providers/reproductive-age/exposure-testing-risks.html

This protocol has been approved by _Jill C. Obremskey, MD, MMHC, FAAP_, CHS Medical Director on _July 1, 2022_.

## What are the rights of the father?

✓ In most cases, if the father wants to have a say in the adoption process, or raise the child himself, he must take steps to legally claim that he is the father.



## Making the decision...

✓ Placing your child for adoption is a personal choice that takes careful thought. It is a permanent decision.

✓ If you are thinking about adoption, talk with a counselor who can help you decide if it is the right option for you.

✓ Places that offer free or low-cost counseling include:
  • Local social or family service agencies
  • Family planning clinics
  • Adoption agencies

✓ You will feel better about any decision you make knowing that you have fully explored your feelings and options.

---

You can get more information about adoption by visiting www.childwelfare.gov/adoption on the Internet. Or talk with your health care provider to learn about services in your area.

*Compliments of*


Office of
Population Affairs
Clearinghouse

P.O. Box 30686, Bethesda, MD 20824–0686
Phone: 1–866–640–7827
Fax: 1–866–592–3299
E-mail: info@opaclearinghouse.org
Web site: www.opaclearinghouse.org

DO NOT REPRODUCE

This pamphlet is not a substitute for medical care. If you have questions or concerns, please talk with a health care provider.

Written by Nancy Calhoun.
Designed by Eva Bernstein. Illustrated by Meg Biddle.
Special thanks to our medical, professional and audience reviewers.

©2007 Journeyworks Publishing. All rights reserved.
Please do not duplicate. Printed on recycled paper.

Title #5497    ISBN 1-56885-497-8

For ordering information contact:
JOURNEYWORKS PUBLISHING
P.O. Box 8466 • Santa Cruz • CA 95061
1-800-775-1998 • www.journeyworks.com

---

# The Adoption Option

GET THE FACTS

NOT FOR DISTRIBUTION

## THE ADOPTION OPTION

If you (or your partner) are pregnant and not sure if you are ready to raise a child, adoption could be on your mind. Getting the facts about adoption can help you decide if it is an option that is right for you.

### What is adoption?

✓ Adoption is the legal placement of a child with another person or family who will raise the child as their own.
✓ It is a process that must be finalized in court.
✓ There are different types of adoptions and it is important to understand your options.
✓ To begin an adoption process, you can contact an adoption agency or adoption attorney.

### What does an adoption agency do?

✓ An agency can be public or private. Services it may provide include:
  • Screening potential adoptive families.
  • Counseling for the birth parents thinking about adoption.
  • Helping with any housing or medical needs during pregnancy.
  • Counseling for birth parents and adoptive families after the adoption.

### What is a private adoption?

✓ Adoptions arranged by a lawyer rather than an agency are called private adoptions.
✓ A lawyer will help the birth parents find an adoptive family, complete the paperwork and deal with other legal aspects of the process.
✓ Some states do not allow private adoptions.

### An adoption can be open.

✓ In an open adoption, birth parents and adoptive parents agree to share certain information about one another.
✓ Each open adoption varies.
  • You may be able to learn about and choose the family who will adopt your child, but not know one another's names or addresses.
  • In other cases, you can meet the adoptive family and stay in touch with them.
  • In some open adoptions, the birth parents may have contact with the child.

### An adoption can be confidential.

✓ A confidential adoption means that the birth parents and adoptive parents do not know one another.
✓ Only necessary medical information about the birth parents will be given to the adoptive parents.
✓ Birth parents will not be told anything about the adoptive family or where the child is placed.
✓ If you want the child to be able to find you once he or she is an adult, you can leave contact information with the agency or with a national registry.

### What is a waiting period?

✓ Every state has different laws about how soon after birth a baby can be placed for adoption. Some have a waiting period.
✓ A waiting period allows the birth parents time to change their minds.
✓ Waiting periods vary from state to state.
✓ To complete an adoption, the birth parents must sign a form that says they are giving up rights to parent the child.
✓ Birth parents can take days or weeks to sign the form. There are no laws setting a deadline.

DO NOT REPRODUCE!

NOT FOR DISTRIBUTION




**FACTSHEET FOR FAMILIES**

February 2014



# Are You Pregnant and Thinking About Adoption?

Are you pregnant and thinking about placing your baby for adoption? Being well-informed may help you feel better about whatever decision you make—whether it is to place your child for adoption or to parent your child yourself. This factsheet provides information about adoption, presents questions to consider, and points to resources that may help you in exploring your options. Others who are affected by adoption decisions, such as expectant fathers and other relatives, also may find this factsheet useful for answering their questions.

## Understanding Adoption

Adoption is a process—with legal, social, and emotional aspects—in which children who will not be raised by their birth parents become permanent legal members of another family. When it comes to adoption, there is no one right decision for everyone. Understanding adoption—including why others choose adoption or not and its long-term impact—may help you figure out what's right for you and your child.

## WHAT'S INSIDE

Understanding adoption

Gathering information and exploring your options

Making the adoption decision: questions to ask yourself

Selecting an agency or independent adoption

Selecting adoptive parents

Staying in touch with your child after adoption

Taking care of yourself

Resources for more information



**Child Welfare Information Gateway**

Children's Bureau

Children's Bureau/ACYF
800.394.3366 | Email: info@childwelfare.gov | https://www.childwelfare.gov



# EXHIBIT B

**Why do some expectant parents choose to place their baby for adoption?** Everyone's situation is different, but many women (and their partners) choose adoption because they do not feel ready or able to raise a child. They often believe that the baby will have a better life in an adoptive home with parents who are ready to welcome and care for a child. As such, these mothers typically feel that they are putting their baby's best interests ahead of their own. Other factors that sometimes play a part in parents' decisions to place their children for adoption include money problems, personal goals, and family attitudes.

**Why do some expectant parents choose to raise their baby rather than place the baby for adoption?** Women experiencing an unplanned pregnancy (and their partners) who consider adoption but decide to raise their child themselves may do so because they conclude that they have the commitment and support necessary to raise a child. They may feel that maintaining their connection with their child and preventing a profound loss for themselves and their child outweigh any possible advantages of adoption. Some birth parents who were unsure before their child's birth find they do feel ready to be a parent after they've held and connected with their baby.

**What is the impact of the adoption decision?** Adoption is more than a one-time legal event; adoption is a lifelong process with long-term impact for everyone involved (your child, you and your family members, the birth father and his relatives, and the adoptive family). Once an adoption is legally finalized, it is permanent, and it will change your relationship with your child forever. In the eyes of the law, your child is no longer related to you. The adoptive parents will raise your child and have full legal rights and responsibilities as the child's parents. While experiences differ, many birth parents who place their child for adoption experience feelings of loss, grief, and guilt. For some, it is a traumatic experience. These feelings may persist many years after the adoption and may negatively affect birth parents' later lives and relationships. (Read more at https://www.childwelfare.gov/adoption/adopt_people/impact.cfm)

- *Keep in mind: While birth parents and children who have been adopted often struggle with identity issues and lifelong feelings of loss and grief, many will learn how to work through these emotions, often with the help of counseling.*

**If I choose adoption, will I know what happens to my child?** Placing a child for adoption does not mean necessarily that you won't have any future contact with your child. In past generations, many adoptions were surrounded in secrecy, and communication between birth parents and their children was discouraged. Today, most infant adoptions have some degree of openness in which birth parents have some contact with adoptive parents and their children who have been adopted. (Open adoption is discussed further on page 8.)

**When do I have to make my decision?** Most State laws require that the final decision to place a child for adoption be made after the baby is born.[1] Think of it as making the adoption decision twice—once while you are pregnant and again after giving birth. After consideration of your options, you may prepare for adoption by selecting a licensed adoption agency or adoption lawyer (see page 5) and selecting adoptive parents (or parent) (see page 7). Nevertheless, the final and legal decision is made by you (or you and the father) after the child's birth.

- *Keep in mind: It's hard to know exactly how you'll feel after the birth of your baby. **You should not sign papers that make the adoption final until you are sure of your decision**. Until the final papers are signed, you have parental rights to make decisions regarding your child.*

---

[1]   For more information on your State's laws and required waiting periods, talk to an adoption lawyer or adoption agency representative. See also *Consent to Adoption* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/consent.cfm.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

## Gathering Information and Exploring Your Options

Gathering information, consulting with others, and thoughtfully exploring all your options will help you make a fully informed decision. Reading this publication can get you started. Other sources of information and support are described below.

- **The Internet**. If you are just beginning to research your options, the Internet can be helpful. You can explore the Internet using search terms such as "unplanned pregnancy," "adoption options," "parenting," and "adoption birth mother" (or "birth father") to name a few. Try to visit trustworthy websites (see the resources listed at the end of this publication). You also may want to look at blogs and discussion forums that include first-person accounts and may provide insights into the adoption process and what others have experienced.

  - *Keep in mind: Information on the web can be biased or inaccurate. Try to look at several websites and blogs and note varied points of view as well as common themes. In addition, be aware that some dishonest online groups may try to take advantage of pregnant women at a vulnerable time.*

- **Books.** Like the Internet, books can let you find and digest information in private. To get a complete view of adoption, you may want to look at books that present different perspectives, including those of parents who placed their children for adoption, parents who adopted children, children and adults who were adopted, and parents raising children in specific situations (for example, single parents or teen parents).

- **Trusted friends and family members.** It can be helpful to talk through your feelings and options with a trusted family member or friend. Try to find someone who will listen and won't pressure you into making a decision that doesn't feel right.

  - *Keep in mind: While it's good to talk things through with friends and family, ultimately, the decision is yours to make.[2]*

- **Counselors.** A trained counselor can help you to not only understand your options and their long-term implications, but also explore your feelings about those options. You can find professional counselors—including therapists and social workers—at public departments of social services, local health or mental health centers and hospitals, and adoption agencies. Counselors also may be religious leaders, including pastors, rabbis, or others associated with a place of worship. Your doctor, friends, or family members may be able to refer you to a professional counselor. Referral services also can be found through local United Way organizations. (Try calling 211 or visiting http://211us.org/.) No matter where you go, look for a counselor who is experienced in working with pregnant women and who treats you with sensitivity and respect.

  - *Keep in mind: It's important to find a counselor who can answer your questions in an unbiased way and who doesn't stand to gain from the decision you make. Some counselors may be predisposed toward one option (for example, due to professional affiliations), or they may have other people's interests in mind (for example, prospective adoptive parents waiting to find an infant available for adoption). As such, some women prefer to find counselors that are not associated with an adoption agency or lawyer to lessen the likelihood of being pressured toward adoption.*

- **Adoption agencies and adoption lawyers.** If you are leaning toward adoption, talking with someone at a licensed adoption agency or with a lawyer who specializes in adoption may be helpful to learn more about the adoption process. (See below for more information on selecting agencies and adoption lawyers.)

  - *Keep in mind: Talking to an agency or lawyer does not mean that you're promising to place your child for adoption but rather serves as another way to collect information. Do not sign any legal papers until you have made up your mind to develop an adoption plan.*

---

[2]  In some States, a minor parent must have consent from his/her parents to place a child for adoption. See Information Gateway's *Consent to Adoption* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/consent.cfm.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

## Making the Adoption Decision: Questions to Ask Yourself

The decision to place a child for adoption is never easy. Like the decision to parent a child, it takes courage and love. Following are some questions that you may want to think about as you make your decision.

**Have I explored all my options?** While you may be leaning in one direction, it's important that you take time and explore all of your options. The options that "rise to the top" may vary depending on your circumstances and beliefs. Carefully assess the benefits and challenges of each option, as well as potential supports to address any challenges. Are you thinking about adoption only because you have current money problems or because your living situation is difficult? If so, there may be other answers. Have you asked friends and family if they can help? Have you looked into local programs or called Social Services to see what they can do? Social workers may be able to help you find a way to parent your baby by assisting with finding a place to live, child care, job training, or other supports. Alternatively, have you considered placing your child (formally or informally) with a family member? If you want more time to make your decision, have you asked an adoption agency whether there are any short-term options available (for example, temporary foster care)?

**Have I involved the baby's father in the decision-making process?** There are several reasons for involving the baby's father, not the least of which are fathers' rights and State laws about fathers' roles and responsibilities in adoption.[3] Most States require that the father (or the man you think is the father) be told about the baby before the adoption. This is true even if you aren't married to the father. While laws vary, your State's law may require that your baby's father (or your husband) sign legal papers agreeing to the adoption—granting legal "consent"—before you can place your child for adoption.[4] In some cases where agencies and lawyers have pushed through adoptions without getting the father's consent, the court has legally overturned the adoption. Note also that, in

some States, if parents are unmarried, the presumed father (or "putative" father) has a certain amount of time to put his name on the State's putative father registry or take other legal action to claim that he is the baby's father. If you don't know the father's name or whereabouts, some States require that a notice be published.[5]

- ▪ *Keep in mind: Laws related to the father's role and responsibilities in adoption differ from State to State. To learn more about the laws in your State, visit https://www.childwelfare.gov/adoption/birth/for/legal.cfm or ask an adoption lawyer or an adoption agency staff member to explain the legal requirements to you.*

If you have a good relationship with your baby's father, you may be able to help each other with considering the options and making a decision. Some women considering adoption, however, do not have a good relationship with their child's father. For example, they may have had a violent relationship with the father.[6] In such circumstances, you can ask an adoption agency or attorney to contact the father rather than deal with him directly.

Regardless of your relationship with your child's father, it's also important to think about your child's future perspective. At some point, most children who have been adopted ask questions about their birth parents and the circumstances of their adoption. Many will want to develop a relationship with their birth father. An adopted person who finds out that his or her birth mother made the adoption decision without consulting the birth father may feel tremendous resentment toward the birth mother.

**Have I talked about this decision with my own family and the father's family?** Your family and/or the father's family may be a source of support as you consider what to do, even if the pregnancy has put a strain on your relationships. Besides emotional support, your families may be able to provide money, housing, and other kinds of help. In addition, if you are under 18 years of age, in some States your own parent(s) may also have to give permission for you to place your baby for adoption.

---

[3]  For more information, visit Fathers' Involvement in Adoption Planning at https://www.childwelfare.gov/adoption/birth/for/father.cfm.
[4]  For more information, read *Consent to Adoption* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/consent.cfm.

[5]  For more information, see *The Rights of Unmarried Fathers* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/putative.cfm.
[6]  For information on services for victims of domestic violence or sexual assault, see https://www.childwelfare.gov/systemwide/domviolence/resources/.

# EXHIBIT B

If you decide to go ahead with adoption, there may be someone in your family or the father's family who would like to adopt your baby. Kinship adoption can help maintain the child's connections to his or her family members and cultural heritage. (For more information on kinship adoption, visit https://www.childwelfare.gov/adoption/adoptive/kinship.cfm.)

**How might I feel in 10 or 20 years if I place my child for adoption or I parent my child myself?** While it's impossible to know for sure how you will feel many years from now, you should consider the long-term effects of any decision you make. For instance, you may want to think about your future with and without this child. How would raising a child or placing a child for adoption affect what you want from life? What support systems may be needed to achieve your long-term plans under each of your options? How might you feel if you go on to have other children, or if you do not have any additional children?

- *Keep in mind: There are no "right" or "wrong" responses to these questions, and you may not know the answers right now.*

## Selecting an Agency or Independent Adoption

If you decide to make an adoption plan for your child, you can choose whether you want:

- An agency adoption
- An independent (or private) adoption handled by an adoption lawyer or by an adoption facilitator (in States where facilitators are allowed by law)

You may not know which type of adoption will work best for you and your baby until you have explored further. Each of these options is described below, along with considerations and resources for selecting qualified professionals.

## Agency Adoption

Adoption agencies are generally full-time organizations whose main work is adoption. They usually employ a staff and work with many families and pregnant women in order to find the best families for babies. Some women choose an agency adoption rather than an independent adoption because licensed agencies follow State adoption standards and often provide more services, such as counseling, before, during, and after the adoption.

If you choose to work with an agency, look for a licensed agency with a good reputation. You can find contact information for licensed domestic adoption agencies in your State from the National Foster Care and Adoption Directory (https://www.childwelfare.gov/nfcad). To find information on the reputation and licensing of an agency, follow the instructions provided in *How to Assess the Reputation of Licensed, Private Adoption Agencies* (https://www.childwelfare.gov/pubs/twenty.cfm).

Once you contact a licensed agency, you will generally work with an adoption counselor. During initial meetings, the adoption counselor typically will do the following:

- Provide you with information about your options for your baby
- Explain the processes for selecting adoptive parents and giving up your parental rights (also referred to as *relinquishment, surrender*, and other terms)
- Collect information about you and the baby's father to create a medical and social history for the baby[7]
- Work with you to develop an adoption plan, if you choose to have one

## A Private/Independent Adoption

Some birth parents choose to place their children for adoption without the involvement of an agency. Some women feel that this will provide them more control, or perhaps they already have identified a prospective family and want to proceed with the adoption. In an independent adoption (or private placement), a pregnant

---

[7]   For more information, see *Collection of Family Information About Adopted Persons and Their Birth Families* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/collection.cfm.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

# EXHIBIT B

## Sample Questions to Ask an Adoption Agency Representative or an Adoption Lawyer

If you are seriously considering adoption as an option, talk to several agencies or lawyers and ask as many questions as you need to feel comfortable.

- *What types of services do you offer, and what are the fees (if any)?*
- *Will I get counseling? During what time period? (before the birth? after placement?)*
- *How will you help me obtaining the consent of the baby's father?*
- *Will you help pay expenses for medical care, housing, counseling, legal fees, or other?*
- *If I change my mind about the adoption, will I have to pay for services already received? (Note: this is illegal in most States)*
- *How do you find and screen prospective adoptive parents?*
- *What role can I play in getting to know and selecting the family who will adopt my child?*
- *Can I receive ongoing information about my child or be able to have direct contact after placement (if I want that option)? What services do you provide to help us stay in touch?*
- *How would you handle the situation if my baby were born with a disability?*
- *Can you provide me with references (names and contact information) of clients whose children you placed for adoption and who have agreed to talk with women considering adoption?*

woman generally works just with a lawyer and the family that she selects to adopt her child.

In an independent adoption, the prospective adoptive parents often pay for the expectant mother's medical costs, legal fees, temporary housing expenses, and possibly other expenses. To help prevent "baby selling," there are strict laws in each State about what prospective parents can and cannot pay for.[8]

**Independent adoption with a qualified lawyer.** If you choose to work with a lawyer, be sure that the lawyer has experience with adoption, is licensed to practice law in your State, and is in good standing with the State Bar Association. You can find names and contact information for adoption attorneys on the American Academy of Adoption Attorneys Membership Directory (http://www.adoptionattorneys.org/aaaa_directory). Additional legal referral resources can be found for each State through the American Bar Association's Legal Help website (http://apps.americanbar.org/legalservices/findlegalhelp/home.cfm). This website also can provide information on whether a person is licensed to practice law in your State (select your State and click on Lawyer Licensing).

When selecting a lawyer, find out about the lawyer's qualifications, experience with adoption, services, fees, and processes. Look for a lawyer who won't charge you a fee if you decide not to place your baby for adoption.

- ***Keep in mind.*** *You should plan to have your own lawyer represent you and your baby, and the adoptive parents should have a different lawyer representing them. It's important that your lawyer is looking out for your interests, especially if you change your mind about adoption.*

**Adoption facilitators.** Some States permit adoption facilitators (a person or organization) to bring together expectant mothers (and their partners) and families seeking to adopt. While in some States, facilitators can be anyone at all, in others they need to be licensed or regulated. And in some States, they are completely

---

[8]  For more information, see *Regulation of Private Domestic Adoption Expenses* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/expenses.cfm.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

Case 3:23-cv-00384-TRM-JEM   Document 1-4   Filed 10/24/23   Page 14 of 29
PageID #: 115

# EXHIBIT B

illegal.[9] State laws regulate or limit the use of adoption facilitators in order to reduce opportunities for individuals to make money from "selling" children.

- **Keep in mind:** *Before you work with anyone to arrange an adoption, find out more about the laws in your State. Be cautious of people who may want to take advantage of your situation.*

## Selecting Adoptive Parents

Whether you place your child through an agency or through an independent adoption, you will probably have a great deal of choice in selecting the parents for your child. Spend some time thinking about what type of family and home you would prefer for your child. For example, are you looking for parents who share your values and beliefs? Is it important to you that your child be raised by two parents or with other siblings? Do you want a family that feels the same way you do about staying in touch after the adoption?[10]

In an agency adoption, families interested in adopting will apply to the agency. You may have the opportunity to look through profiles, letters, pictures, and/or videos to select potential parents for your child. If you want, many agencies will arrange for you to meet prospective adoptive families before you make a decision on which family feels right.

In an independent adoption, there are many ways that expectant mothers find potential adoptive parents. Sometimes they become aware of families interested in adoption through a lawyer, doctor, family members, a friend, or their faith community. Some people who want to adopt develop profiles that appear on websites and social media forums like Facebook or run ads in local newspapers. This type of advertising is restricted or illegal in some States but is very popular in other places.[11] Once you make contact with a potential adoptive family, an adoption lawyer can help you follow up.

## Legal Considerations in Some Cases

As noted throughout this publication, you should be aware of the various State laws that govern adoption processes (see https://www.childwelfare.gov/adoption/birth/for/legal.cfm). In addition to State laws, there are special Federal laws that relate to adoption and race/ethnicity:

- **Multi-Ethnic Placement Act (MEPA).** MEPA prohibits publically funded agencies from delaying or denying the placement of a child due to the race, color, or national origin of either the child or the adoptive family. Regardless of the expectant parents' wishes, an adoption agency may not be able to wait until a family from a requested ethnic group is available.

- **Indian Child Welfare Act (ICWA).** ICWA states that if an American Indian or Alaskan Native baby is placed for adoption, the child's extended family must be given the chance to adopt the baby. If they choose not to adopt, members of the child's Tribe, followed by members of other Indian Tribes, must be offered the chance for adoption. This law gives the Tribal court the right to make adoption decisions. If you or the baby's father has any American Indian or Alaskan Native heritage, talk with an adoption lawyer to see how this law might apply.

- **Keep in mind:** *While the Internet and social media make finding information about prospective adoptive parents quicker and easier, they also can create opportunities for pressure, fraud, and exploitation. If you use the Internet to find potential adoptive parents, be sure to ask lots of questions to assess whether the service providers are ethical and the services are in your and your child's best interest.*

---

[9]   For more information, see *Use of Advertising and Facilitators in Adoptive Placements* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/advertising.cfm.

[10]   For a list of sample questions to ask prospective parents, see the American Pregnancy Association website at http://americanpregnancy.org/adoption/guidelineschoosingfamily.html.

[11]   For more information, read *Use of Advertising and Facilitators in Adoptive Placements* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/advertising.cfm.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

Case 3:23-cv-00384-TRM-JEM    Document 1-4    Filed 10/24/23    Page 15 of 29
PageID #: 116

In both agency adoptions and private/independent adoptions, prospective adoptive families must complete a home study process. The purpose of the home study is to ensure that the adoptive home is safe and appropriate for the child. A home study typically includes interviews with prospective parents, visits to the home, and background and criminal record checks.[12] Talk with your counselor or lawyer about getting a copy of a potential adoptive family's profile and/or home study.

## Staying in Touch With Your Child After Adoption

Today, most domestic infant adoptions involve some level of "openness." Open adoption allows birth parents to know and have contact with the adoptive parents and possibly the child who has been adopted. After the adoption, the birth mother (and possibly the birth father and other family members) and the adoptive family can communicate in various ways—letters, phone calls, social media, emails, texts, video calls, and/or visits. In some cases, the adoption agency may serve as an intermediary to pass information between birth families and adoptive families. The type and frequency of communication will depend on the choices and needs of the people involved and often changes over time.[13]

Research points to many benefits of openness for children who have been adopted and their birth mothers. Through direct contact with birth family members, openness can help your child learn more about his or her personal history, family background, medical information, and the reasons for placement. As a result, your child can benefit from a stronger sense of identity, self-worth, and connection. In addition, birth mothers often report a greater sense of control in an open adoption and comfort from knowing that their child is healthy and cared for.

Many birth mothers in open adoptions also have been shown to adjust better after the adoption.[14]

Some birth parents feel that they would prefer not to have contact with their child after the adoption and may arrange for a "closed" adoption. In closed adoptions, the birth parents and the adoptive parents do not know each other, although the adoptive parents may receive some nonidentifying information about the birth parents (such as a medical history). These types of adoptions are becoming less common as the benefits of openness are increasingly recognized. In addition, as social media make it easier for people who have been adopted and birth family members to find each other, it is becoming harder to keep an adoption closed.

If you decide to make an adoption plan, talk to your adoption counselor or adoption lawyer about how much contact you are interested in having with your child's adoptive parents and your child. You and the prospective adoptive parents should work out in advance how you will keep in touch, how often, who will be involved, and how you will go about changing the arrangements if desired in the future. Sometimes these arrangements will be formalized into a written postadoption contact agreement.[15]

- **Keep in mind:** *Postadoption agreements can be useful tools in setting common expectations and should be filed before the adoption is finalized. However, such agreements may not be enforceable by law if the adoptive or birth parents change their minds and decide to drop communication.*

---

[12] For more information, read *The Adoption Home Study Process* at https://www.childwelfare.gov/pubs/f_homstu.cfm.
[13] For more information about open adoption, see *Open Adoption: Could Open Adoption be the Best Choice for You and Your Baby* at https://www.childwelfare.gov/pubs/openadoption.cfm and *Openness in Adoption: Building Relationships Between Adoptive and Birth Families* at https://www.childwelfare.gov/pubs/f_openadopt.cfm.

[14] For a summary of openness research see *Openness in Adoption: From Secrecy and Stigma to Knowledge and Connections* on the Donaldson Adoption Institute website at http://adoptioninstitute.org/publications/openness-in-adoption-from-secrecy-and-stigma-to-knowledge-and-connections/.
[15] For more information, see *Postadoption Contact Agreements Between Birth and Adoptive Families* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/cooperative.cfm.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

8

## Safe Havens

Many States have safe haven laws that allow mothers to leave their newborn babies at certain places—such as hospitals, police stations, or fire stations. Leaving a baby where someone can keep the child safe until a permanent home is found is a better choice than abandoning a baby in unsafe circumstances; however, there are several disadvantages to not working directly with an adoption professional. The child may grow up with little or no information about his or her family or medical history and will be unlikely to reunite with a birth parent later, if desired. Birth mothers who leave their babies at safe havens may have fewer opportunities for counseling. For more information, see *Infant Safe Haven Laws* at https://www. childwelfare.gov/systemwide/laws_policies/statutes/ safehaven.cfm.

## Taking Care of Yourself

During and after an unplanned or crisis pregnancy, you may feel anxious, stressed, overwhelmed, and many other emotions. Be sure to get proper health care for your baby and you. Counseling during your pregnancy— particularly with a neutral, trained professional—may help you cope with your emotions and empower you to make sound decisions for yourself and for the baby. Counseling after the birth can help you learn to live with whatever decisions you make. Some licensed adoption agencies will provide counseling services after the adoption for as long as you need it. In independent adoptions, most States allow, and some States require, adoptive parents to pay for the birth mother's counseling (with various time limits).[16]

Grief and loss are common reactions for birth parents after they place their child for adoption. Some birth parents also go through phases of feeling guilty and angry.[17] Strong feelings of grief and regret may occur many years after the adoption takes place. It's important to admit these feelings to yourself and to know that they are normal. Years after the adoption, you or your child may try to contact one another. The search and reunion process can be an intense emotional experience, which may benefit from professional support.[18]

Whatever level of ongoing contact you have with your child, counseling can be helpful. One-to-one counseling and/or support groups with other birth mothers may help you accept your adoption arrangements, resolve your grief, feel good about yourself, and plan for your future. Moving forward does not mean that you will ever forget your baby, but just that you are ready to accept and integrate the adoption as part of your life.

## Resources for More Information

### Websites and Blogs

Child Welfare Information Gateway

- For Expectant Parents Considering Adoption and Birth Parents
  https://www.childwelfare.gov/adoption/birth/for
- Glossary of Adoption and Child Welfare Terms
  https://www.childwelfare.gov/admin/glossary/index. cfm
- Laws Related to Adoption
  https://www.childwelfare.gov/adoption/laws/
- National Foster Care & Adoption Directory Search
  https://www.childwelfare.gov/nfcad/

Adoption Together Birthparents Blog
http://www.birthparentblog.com/

America Adopts
http://www.americaadopts.com/pregnant/

American Adoption Congress
http://www.americanadoptioncongress.org

American Pregnancy Association
http://americanpregnancy.org/adotion/adoptionfaq.html

---

[16] For more information, see *Regulation of Private Domestic Adoption Expenses* at https://www.childwelfare.gov/systemwide/laws_policies/statutes/ expenses.cfm.

[17] For more information, see *Impact of Adoption on Birth Parents* at https:// www.childwelfare.gov/pubs/f_impact/index.cfm.
[18] For more information about search and reunion, visit https://www. childwelfare.gov/adoption/search/.

This material may be freely reproduced and distributed. However, when doing so, please credit Child Welfare Information Gateway. Available online at https://www.childwelfare.gov/pubs/f_pregna

# EXHIBIT B

Concerned United Birthparents (CUB)
http://www.cubirthparents.org

Insight: Open Adoption Resources and Support
http://openadoptioninsight.org/expectant-parents/

National Council for Adoption, IChooseAdoption.org
http://ichooseadoption.org/

Open Adoption Bloggers
http://openadoptionbloggers.com

## Publications

Child Welfare Information Gateway. (2013). *Impact of adoption on birth parents.* Available from: https://www.childwelfare.gov/pubs/f_impact/index.cfm

Child Welfare Information Gateway. (2013). *Openness in adoption: Building relationships between adoptive and birth families.* Available from: https://www.childwelfare.gov/pubs/f_openadopt.cfm

Child Welfare Information Gateway and Office of Population Affairs. (2013). *Open adoption: Could open adoption be the best choice for you and your baby?* Available from: https://www.childwelfare.gov/pubs/openadoption.cfm

Caldwell, M. (2008). *So I Was Thinking About Adoption… Considering Your Choices.* American Carriage House Publishing.

Fessler, A. (2006). *The girls who went away: The hidden history of women who surrendered children for adoption in the decades before Roe v. Wade.* Penguin Press.

Mary Martin Mason. (1995). *Out of the shadows: Birthfathers' stories.* O.J. Howard Publishing.

Siegel, D.H., & Smith, S.L. (2012). *Openness in adoption: From secrecy and stigma to knowledge and connections.* Available from: http://adoptioninstitute.org/publications/openness-in-adoption-from-secrecy-and-stigma-to-knowledge-and-connections/

Smith, S. (2007). *Safeguarding the rights and well-being of birthparents in the adoption process.* Available from: http://adoptioninstitute.org/publications/safeguarding-the-rights-and-well-being-of-birthparents-in-the-adoption-process/

## Suggested citation:

Child Welfare Information Gateway. (2014). *Are you pregnant and thinking about adoption?* Washington, DC: U.S. Department of Health and Human Services, Children's Bureau.





U.S. Department of Health and Human Services
Administration for Children and Families
Administration on Children, Youth and Families
Children's Bureau




**HOJA INFORMATIVA PARA LAS FAMILIAS**

Junio de 2014

*Available in English*
*https://www.childwelfare.gov/*
*pubs/f_pregna/index.cfm*



# ¿Está Embarazada y Pensando en la Adopción?
## (Are You Pregnant and Thinking About Adoption?)

¿Está embarazada y pensando en hacer un plan de adopción para su bebé? Estar bien informada puede ayudarla a sentirse mejor acerca de cualquier decisión que tome, sea colocar a su hijo en adopción o criarlo usted misma. Esta hoja informativa ofrece información sobre la adopción, preguntas a considerar y señala recursos que podrían ayudarle a explorar sus opciones. Esta hoja informativa también puede ser de utilidad para abordar las preguntas de otras personas, como los futuros padres y otros parientes, quienes también son afectadas por las decisiones relacionadas con la adopción.

## Entendiendo la Adopción

La adopción es un proceso—con aspectos legales, sociales y emocionales—en el cual niños quienes no van a ser criados por sus padres biológicos se hacen miembros permanentes y legales de otra familia. No existe una sola decisión que sea la correcta para todas las personas cuando se trata de la adopción. El entender la adopción, incluyendo las razones por las cuales algunas personas eligen o no la adopción y sus consecuencias a largo plazo, puede ayudarla a tomar la mejor decisión para usted y su hijo.

### SECCIONES INCLUIDAS

Entendiendo la adopción

La recopilación de información y exploración de sus opciones

Tomando la decisión de planear una adopción: preguntas a considerar

Decidiendo entre la adopción por agencia y la adopción independiente

Seleccionando a los padres adoptivos

Manteniendo el contacto con su hijo después de la adopción

Cuidándose a sí misma

Recursos para más información





# EXHIBIT B

**¿Por qué algunos futuros padres eligen planear una adopción para su bebé?** Cada quien enfrenta situaciones diferentes, pero muchas mujeres (y sus parejas) escogen la adopción porque no se sienten preparadas o capaces de criar a un niño. Muchas veces sienten que el bebé tendrá una vida mejor en un hogar adoptivo donde será bienvenido y cuidado por padres que están mejor preparados para criar a un niño. Por lo tanto, las madres que deciden hacer un plan de adopción para sus hijos sienten que están poniendo el interés del niño por encima del suyo. Otros factores que pueden jugar un papel en la decisión de algunos padres de planear una adopción para sus hijos incluyen problemas financieros, metas personales y actitudes familiares.

**¿Por qué algunas futuras madres y futuros padres escogen criar a sus hijos en lugar de planear una adopción?** Las mujeres que experimentan un embarazo no planificado (y sus parejas) que deciden criar a su hijo por su cuenta lo hacen porque sienten que tienen la dedicación y el apoyo necesario para cuidar a un niño. Pueden sentir que la preservación de su vínculo con su hijo y la prevención de una profunda pérdida, tanto para su hijo como para ellas mismas, son más importantes que cualquier ventaja que podría ofrecer la adopción. Algunos padres biológicos que no están seguros de su decisión antes del nacimiento de su hijo encuentran que sí se sienten preparados para ser padres luego de haber tomado a su bebé en sus brazos y conectado con él o con ella.

**¿Cuál es el impacto de la decisión de planear una adopción?** La adopción es más que un evento único legal; es un proceso que dura toda la vida con un impacto a largo plazo sobre todas las personas involucradas (su hijo, usted misma y su familia, el padre biológico y su familia y la familia adoptiva). Una vez que la adopción es finalizada legalmente, la decisión es permanente y cambiará para siempre su relación con el niño. A los ojos de la ley, su hijo ya no es familiar suyo. Los padres adoptivos se encargarán de criar a su hijo y tendrán todos los derechos y las responsabilidades legales como padres del niño. Aunque todas las experiencias son diferentes, muchos padres que deciden colocar a su hijo en adopción experimentan sentimientos de pérdida, tristeza y culpa. Para algunos, es una experiencia traumática. Estos sentimientos pueden continuar por muchos años después de la adopción y pueden tener efectos negativos sobre las vidas y las relaciones de los padres biológicos en el futuro. (Encuentre más información, en inglés, aquí: https://www.childwelfare.gov/adoption/adopt_people/impact.cfm)

> ▪ **Tenga en cuenta:** *Aunque los padres biológicos y los niños que han sido adoptados a menudo lidian con problemas de identidad y sentimientos de pérdida y culpa durante sus vidas, muchos de ellos aprenderán a superar estas emociones, a menudo con la ayuda de consejería.*

**Si decido hacer un plan de adopción, ¿sabré qué sucederá con mi hijo?** La decisión de colocar a un niño en adopción no necesariamente significa que no tendrá contacto alguno con su niño en el futuro. En las generaciones pasadas, muchas adopciones estaban envueltas en secretismo, y la tendencia era aconsejar contra las comunicaciones entre los padres biológicos y sus hijos. Hoy en día, la mayoría de las adopciones de bebés tienen un grado de apertura en el cual los padres biológicos tienen algún contacto con los padres adoptivos y sus hijos quienes han sido adoptados. (La página 9 abarca el tema de la adopción abierta en más detalle).

**¿Cuándo tengo que tomar mi decisión?** La mayoría de las leyes Estatales requieren que la decisión final de colocar a un niño en adopción se tome después del nacimiento del bebé[1]. Véalo como si tuviera que tomar la decisión de adopción dos veces—la primera vez durante el embarazo y nuevamente una vez que dé a luz. Luego de haber considerado todas sus opciones, puede prepararse para la adopción seleccionando una agencia autorizada de adopción o abogado especializado en adopciones (vea la página 5) y seleccionando a los padres (o al padre o la madre) adoptivos (vea la página 7). Sin embargo, es usted (o usted y el padre del bebé) quien

---

[1]  Para más información sobre las leyes en su Estado y los periodos de espera requeridos, hable con un abogado especializado en la adopción o con un representante de una agencia de adopción. Vea también *Consent to Adoption (Consentimiento Para la Adopción)*, solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/consent.cfm

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

# EXHIBIT B

tomará la última decisión después del nacimiento del niño.

- *Tenga en cuenta: Es difícil saber cómo se va a sentir después del nacimiento de su bebé. Por esta razón, no debe firmar ningún documento finalizando la adopción hasta que esté segura de su decisión. Hasta el momento en que se firman los documentos finales, usted tiene los derechos parentales que le permiten tomar decisiones con respecto a su hijo.*

## La Recopilación de Información y Exploración de Sus Opciones

Para poder tomar una decisión bien informada, debe recopilar información, consultar con otras personas y explorar conscientemente todas las opciones a su disposición. Su lectura de esta publicación puede ayudarla a empezar. A continuación se describen otras fuentes de información y apoyo.

- **La Internet.** La Internet puede ser un buen punto de partida si apenas empieza a buscar información sobre sus opciones en cuanto a la adopción. Puede explorar recursos por Internet haciendo búsquedas y usando términos como "embarazo no planificado", "embarazo inesperado", "opciones de adopción", "crianza de los hijos", y "madre biológica y adopción" (o "padre biológico"), por dar unos ejemplos. Trate de visitar páginas confiables (vea la lista de recursos en la última sección de esta publicación). Quizás también querrá leer blogs/ciberdiarios y foros de discusión que incluyen relatos en primera persona, los cuales pueden proporcionar cierta perspectiva acerca del proceso de la adopción y las experiencias de personas que lo han vivido.

  - *Tenga en cuenta: La información que encuentre por Internet puede ser incorrecta, tendenciosa o escrita solo desde un punto de vista. Trate de visitar varias páginas web y blogs y note los diferentes puntos de vista, como también los temas que encuentre en común. Además, tenga en cuenta que existen grupos en línea deshonestos que pueden tratar de aprovecharse de mujeres embarazadas en momentos de vulnerabilidad.*

- **Los libros.** Los libros, como la Internet, le permiten encontrar y asimilar información con privacidad. Para hacerse una idea general de lo que es una adopción,

tal vez quiera buscar libros que presenten diferentes perspectivas, incluyendo la de padres quienes han colocado a sus hijos en adopción, padres que han adoptado niños, niños y adultos que fueron adoptados y padres que están criando a sus hijos en circunstancias particulares (por ejemplo, madres solteras o padres adolescentes).

- **Amigos y familiares de confianza.** Hablar con un amigo o familiar de confianza acerca de sus sentimientos y opciones puede ser una gran ayuda. Trate de encontrar a alguien que la escuche y no le presione a tomar una decisión con la cual no se sienta cómoda.

  - *Tenga en cuenta: Es buena idea hablar acerca de sus sentimientos y opciones con amigos y familiares pero, a fin de cuentas, la decisión es suya[2].*

- **Consejeros.** Un consejero capacitado puede ayudarle a entender sus opciones y las consecuencias a largo plazo de esas opciones, como también explorar sus sentimientos acerca de esas opciones. Puede encontrar consejería profesional, incluyendo terapeutas y trabajadores sociales, a través de departamentos públicos de servicios sociales, centros y hospitales locales para la salud física y mental y agencias de adopción. Los líderes religiosos también pueden ser consejeros, incluyendo pastores, rabinos u otras personas asociados con lugares de adoración o de culto. Su doctor, sus amigos o sus familiares quizás puedan remitirle a un consejero profesional. También puede encontrar servicios de referencia a través de su organización local de United Way. (Llame al 211 en su teléfono o visite la página web http://211us.org/). Donde sea que vaya para recibir ayuda, asegúrese de buscar a un consejero con experiencia trabajando con mujeres embarazadas y quien la atienda con sensibilidad y respeto.

  - *Tenga en cuenta: Al considerar la adopción, es importante encontrar un consejero que le dé información y que conteste sus preguntas de una manera sensible y neutral. Busque un consejero que no espere obtener un beneficio económico de su caso. Algunos consejeros pueden estar*

---

[2]   En algunos Estados, un padre o madre menor de edad necesita el consentimiento de sus padres para hacer un plan de adopción para un niño. Vea el recurso en inglés de Information Gateway *Consent to Adoption (Consentimiento Para la Adopción)*: https://www.childwelfare.gov/systemwide/laws_policies/statutes/consent.cfm

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

*predispuestos hacia una opción u otra (por ejemplo, a causa de afiliaciones profesionales), o podrían tener en mente los intereses de otras personas (por ejemplo, padres adoptivos viables esperando encontrar un bebé que esté disponible para adoptar). Por lo tanto, algunas mujeres prefieren encontrar consejeros no afiliados con agencias de adopción o con abogados para aminorar las probabilidades de ser presionadas a hacer un plan de adopción.*

- **Las agencias y los abogados de adopción.** Si usted está casi segura de que quiere hacer un plan de adopción para su bebé, puede ser una buena decisión contactar a una agencia o abogado con experiencia en la adopción. Ellos le pueden dar más detalles sobre el proceso de adopción. (Lea a continuación para más información acerca de cómo seleccionar una agencia de adopción o abogado con experiencia en la adopción).

  - **Tenga en cuenta:** *El simple hecho de hablar con una agencia o un abogado no quiere decir que se está comprometiendo a colocar a su bebé en adopción. Es sencillamente una manera más de recopilar información para tomar una buena decisión. No firme ningún documento legal antes de estar segura de su decisión de hace un plan de adopción.*

## Tomando la Decisión de Planear una Adopción: Preguntas a Considerar

Nunca es fácil tomar la decisión de hacer un plan de adopción para su hijo. Igual que la decisión de criar a un hijo, esta decisión requiere mucha valentía y mucho amor. Tal vez quiera considerar las preguntas a continuación antes de tomar su decisión.

**¿Ya exploré todas mis opciones?** Aunque esté casi decidida por una opción en particular, es importante que tome tiempo para explorar todas sus opciones. Las opciones que parezcan ser las más indicadas pueden variar según sus circunstancias y creencias. Debe evaluar en detalle los beneficios y posibles desafíos de cada opción, como también los posibles apoyos que puedan ayudarla a enfrentar cualquier desafío. ¿Está pensando en la adopción solo porque en este momento tiene

problemas de dinero o por dificultades con su situación de vivienda? Si este es el caso, pueden existir otras opciones. ¿Le preguntó a sus parientes y amistades si pueden ayudar? ¿Averiguó acerca de programas locales? ¿Se comunicó con su agencia local de servicios sociales para ver si le pueden ayudar? Los trabajadores sociales quizás puedan ayudarla a encontrar la manera de criar a su bebé. Por ejemplo, pueden ayudarle a encontrar un lugar donde vivir, cuidado de menores, entrenamiento para el trabajo u otros apoyos. ¿Ha considerado la alternativa de colocar a su hijo (formal o informalmente) con un pariente? Si necesita más tiempo para tomar una decisión, ¿le ha preguntado a una agencia de adopción si hay disponibles opciones a corto plazo (por ejemplo, el cuidado de crianza temporal)?

**¿Involucré al padre del bebé en esta decisión?** Hay varias razones para involucrar al padre del bebé, y entre las más importantes están los derechos legales de los padres y las leyes Estatales relacionadas con el papel y las responsabilidades de los padres en cuanto a la adopción[3]. En la mayoría de los Estados es obligatorio informar al padre (o al hombre que cree que es el padre) antes de hacer un plan de adopción. Este es el caso aun si no está casada con el padre. Aunque las leyes varían de Estado a Estado, su Estado puede requerir que el padre de su bebé (o su esposo) firme documentos legales dando su permiso, o "consentimiento legal", antes de que usted pueda colocar a su hijo en adopción[4]. En ciertos casos donde agencias y abogados han forzado el proceso y se han llevado a cabo adopciones sin avisar al padre, la corte ha anulado legalmente la adopción. También tenga en cuenta que en algunos Estados, si los padres del bebé no están casados, el presunto padre (o padre "putativo") tiene un tiempo determinado para registrarse en el registro de padres putativos del Estado o tomar otra acción legal para poder reclamar la paternidad del niño. Si usted no sabe el nombre del padre de su bebé o su

---

[3]  Para más información, visite la seccione web en inglés Fathers' Involvement in Adoption Planning (El Papel de los Padres en Planear una Adopción): https://www.childwelfare.gov/adoption/birth/for/father.cfm
[4]  Para más información, lea *Consent to Adoption (Consentimiento Para la Adopción)*, solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/consent.cfm

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

paradero, algunos Estados requieren que se publique un aviso en un periódico donde el padre lo pueda ver[5].

▪ *Tenga en cuenta: Las leyes relacionadas con el papel y las responsabilidades del padre en la adopción son diferentes de Estado a Estado. Para aprender más acerca de las leyes en su Estado, visite https://www. childwelfare.gov/adoption/birth/for/legal.cfm (solo disponible en inglés) o consulte con un abogado especializado en la adopción o con el personal de una agencia de adopción y pídales que le expliquen los requerimientos legales.*

Si tiene una buena relación con el padre de su bebé, podrían ayudarse entre sí a considerar las opciones y tomar una decisión. Sin embargo, algunas mujeres considerando la adopción no tienen una buena relación con el padre de su hijo. Por ejemplo, la relación con el padre puede haber sido violenta[6]. En situaciones como esta, puede solicitar la ayuda de una agencia de adopción o un abogado para contactar al padre en lugar de enfrentarlo usted directamente.

Sea cual sea su relación con el padre de su hijo, es importante que también piense acerca del punto de vista que tendrá su hijo en el futuro. En algún momento, la mayoría de los niños que han sido adoptados preguntan acerca de su madre y padre biológico y las circunstancias de su adopción. Muchos querrán desarrollar una relación con su padre biológico. Una persona que ha sido adoptada que llega a saber que su madre biológica tomó la decisión de hacer un plan de adopción sin consultar con el padre biológico puede sentir un gran resentimiento hacia la madre biológica.

### ¿Involucré a mi familia y a la familia del padre en esta decisión?

Su familia y/o la familia del padre también pueden ser una fuente de apoyo mientras considera qué hacer, aun si su embarazo ha causado tensión en sus relaciones familiares. Además del apoyo emocional, su familia y la del padre tal vez puedan ofrecerle un lugar donde vivir, dinero u otro tipo de ayuda durante

su embarazo. Además, en algunos Estados, sus padres pueden tener que darle permiso para colocar a su bebé en adopción si usted tiene menos de 18 años de edad.

Si quiere seguir adelante con la adopción, es posible que alguien de su familia o de la familia del padre quiera adoptar a su bebé. La adopción por parientes puede ayudar a mantener las conexiones del niño con sus familiares y su herencia cultural. (Para más información (en inglés) acerca de la adopción por parientes, visite https:// www.childwelfare.gov/adoption/adoptive/kinship.cfm).

### ¿Cómo me sentiré en 10 o 20 años si hago un plan de adopción para mi hijo, y cómo me sentiré si lo crío por mi cuenta?

Aunque es imposible saber cómo se sentirá dentro de muchos años, debe tomar en cuenta los efectos a largo plazo de su decisión. Por ejemplo, quizás querrá pensar en su futuro con y sin su hijo. ¿Qué efecto tendría la crianza de un niño o la colocación de un niño en adopción sobre lo que usted desea de su vida? ¿Cuáles sistemas de apoyo serían necesarios para ayudarla a lograr sus metas a largo plazo dentro de cada una de sus opciones? ¿Cómo se sentiría si algún día tiene otros hijos, o si no llega a tener más hijos?

▪ *Tenga en cuenta: No hay respuestas "correctas" o "incorrectas" a estas preguntas, y puede ser que usted no sepa las respuestas en este momento.*

## Decidiendo Entre la Adopción por Agencia y la Adopción Independiente

Si usted decide hacer un plan de adopción para su niño, puede elegir si desea:

▪ La adopción a través de una agencia

▪ La adopción independiente (o privada), la cual es manejada por un abogado especializado en la adopción o por un facilitador de adopciones (en los Estados donde la ley permite el uso de facilitadores)

Usted puede no saber qué tipo de adopción es la mejor indicada para usted y para su bebé hasta que explore las opciones en más detalle. Cada una de estas opciones se describe a continuación, como también consideraciones y recursos para seleccionar profesionales debidamente calificados.

---

[5] Para más información, lea *The Rights of Unmarried Fathers (Los Derechos de Padres No Casados)*, solo disponible en inglés: https://www.childwelfare. gov/systemwide/laws_policies/statutes/putative.cfm

[6] Para más información en inglés acerca de servicios para víctimas de violencia doméstica o agresión sexual, vea https://www.childwelfare.gov/ systemwide/domviolence/resources/.

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

## La Adopción a Través de una Agencia

Las agencias de adopción por lo general son organizaciones que se dedican únicamente a la adopción. Usualmente emplean un personal y trabajan con muchas familias y mujeres embarazadas para encontrar los mejores hogares para los bebés. Algunas mujeres eligen la adopción a través de una agencia en vez de la adopción independiente porque las agencias autorizadas siguen las normas de adopción Estatales y a menudo ofrecen más servicios, como consejería antes, durante y después de la adopción.

Si decide trabajar con una agencia, busque una que esté autorizada y tenga buena reputación. Puede encontrar la información de contacto de las agencias autorizadas de adopción doméstica en su Estado en el Directorio Nacional del Cuidado Temporal y la Adopción (National Foster Care and Adoption Directory) (https://www.childwelfare.gov/nfcad) (versión en español: https://www.childwelfare.gov/nfcad/index. cfm?event=viewNamSearchForm). Para encontrar información acerca de la reputación y autorización de una agencia, siga las indicaciones que aparecen en *How to Assess the Reputation of Licensed, Private Adoption Agencies (Cómo Evaluar la Reputación de las Agencias Autorizadas y Privadas de Adopción)* (https://www. childwelfare.gov/pubs/twenty.cfm) (solo disponible en inglés).

Por lo general, una vez que contacte a una agencia autorizada, trabajará con un consejero de adopción. Durante sus primeras reuniones, el consejero típicamente hará lo siguiente:

- Le dará información acerca de sus opciones para su bebé
- Le explicará los procesos de seleccionar padres adoptivos y renunciar a sus derechos de patria potestad
- Recopilará información acerca de usted y del padre del bebé para crear un expediente médico y social para el bebé[7]

---

[7]  Para más información, vea *Collection of Family Information About Adopted Persons and Their Birth Families (La Recopilación de Información Familiar Sobre las Personas que Han Sido Adoptadas y sus Familias Biológicas)*, solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/ statutes/collection.cfm

- De así desearlo, trabajará con usted para desarrollar un plan de adopción

### Ejemplos de Preguntas Para Hacerle al Representante de la Agencia de Adopción o Abogado Especializado en Adopción

Si está considerando seriamente la adopción como una opción, hable con varias agencias o abogados y hágales cuantas preguntas sean necesarias para que usted se sienta cómoda.

- *¿Qué tipo de servicios ofrecen, y cuáles son los costos asociados (si los hay)?*
- *¿Recibiré consejería? ¿Durante qué periodo de tiempo? (¿antes del parto? ¿después de la colocación del bebé?)*
- *¿Cómo van a obtener el permiso del padre del bebé?*
- *¿Me ayudarán con los costos médicos, de vivienda, de consejería, legales u otros costos adicionales?*
- *¿Si cambio de opinión con respecto a la adopción, tendré que pagar los servicios que ya he recibido? (Nota: es ilegal hacer esto en la mayoría de los Estados)*
- *¿Cómo encuentran y evalúan/tamizan a los padres adoptivos viables?*
- *¿Qué papel puedo jugar en conocer y seleccionar a la familia que adoptará a mi hijo?*
- *¿Puedo recibir información continua acerca de mi hijo o tener contacto directo con él o ella después de la colocación (si deseo tener esa opción)? ¿Qué servicios ofrecen para ayudarnos a mantener el contacto?*
- *¿Qué pasa si el bebé nace con una discapacidad física o mental?*
- *¿Me pueden proporcionar referencias (nombres e información de contacto) de clientes a quienes han ayudado con la colocación de sus hijos y que están dispuestos a hablar con mujeres que están considerando la adopción?*

## La Adopción Privada/Independiente

Algunos padres biológicos eligen hacer un plan de adopción para sus hijos sin involucrar a una agencia. Algunas mujeres sienten que tendrán más control sobre el proceso en una adopción privada/independiente, o quizás ya han identificado a una familia viable y quieren proceder con la adopción. Por lo general, en una adopción independiente (o colocación privada), una mujer embarazada trabaja solamente con un abogado y con la familia que ella ha seleccionado para adoptar a su hijo.

En la adopción independiente, los padres adoptivos viables a menudo cubren los costos médicos, legales, de vivienda temporal y otros posibles costos de la madre biológica. Hay leyes estrictas en cada Estado que especifican cuáles costos pueden y no pueden pagar los padres adoptivos viables, la cuales existen para impedir las "ventas de bebés"[8].

**La adopción independiente con un abogado calificado.** Si elige trabajar con un abogado, asegúrese que el abogado tenga experiencia con adopciones, tenga licencia para ejercer la abogacía en su Estado y este acreditado y en buena posición en el Bar Association, o la asociación de abogados, del Estado. Puede encontrar nombres e información de contacto de abogados especializados en la adopción a través del American Academy of Adoption Attorneys Membership Directory, un directorio de los abogados que son miembros de la academia americana de abogados de adopción (http://www.adoptionattorneys.org/aaaa_directory). El sitio web American Bar Association Legal Help ofrece recursos adicionales para referencias legales en cada Estado (http://apps.americanbar.org/legalservices/findlegalhelp/home.cfm). También puede buscar información a través de este sitio web acerca de si una persona en particular tiene o no tiene licencia para ejercer la abogacía en su Estado (seleccione su Estado y elija "Lawyer Licensing").

Cuando vaya a seleccionar a un abogado, debe buscar información acerca de sus calificaciones, su experiencia con la adopción, los servicios que ofrece, sus honorarios y sus procesos. Busque un abogado que no le cobre una cuota si usted decide no hacer un plan de adopción para su bebé.

> ▪ *Tenga en cuenta: Usted debe planear tener un abogado propio que la represente a usted y a su bebé, y los padres adoptivos deben tener otro abogado diferente representándolos a ellos. Es importante que su abogado este pendiente de sus intereses, especialmente si usted cambia de opinión con respecto a la adopción.*

**Facilitadores de adopción.** Algunos Estados permiten el uso de facilitadores de adopción, los cuales pueden ser personas u organizaciones. Los facilitadores sirven como intermediarios para juntar a madres embarazadas (y sus parejas) con familias que buscan adoptar. En ciertos Estados, los facilitadores pueden ser cualquier persona, mientras que en otros Estados deben ser autorizados o regulados. En algunos Estados, los facilitadores son completamente ilegales[9]. Las leyes Estatales regulan o limitan el uso de facilitadores de adopción con el fin de reducir las oportunidades de las personas para ganar dinero a través de la "venta" de niños.

> ▪ *Tenga en cuenta: Antes de empezar a trabajar con cualquier persona o entidad para coordinar una adopción, debe buscar información acerca de las leyes en su Estado. Tenga cuidado con personas que pueden querer aprovecharse de su situación.*

## Seleccionando a los Padres Adoptivos

Ya sea que coloque a su hijo por medio de una agencia o de manera independiente, es probable que pueda ayudar a escoger a los padres adoptivos de su hijo. Tome tiempo para considerar qué tipo de familia y hogar preferiría usted para su hijo. Por ejemplo, ¿está buscando padres que compartan sus valores y creencias? ¿Es importante para usted que su hijo sea creado por una pareja o con hermanos y hermanas? ¿Quiere una familia que comparta sus sentimientos y expectativas con respecto a mantener el contacto después de la adopción[10]?

---

[8]  Para más información, vea *Regulation of Private Domestic Adoption Expenses (La Regulación de los Costos de Adopciones Domesticas Privadas)*, solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/expenses.cfm

[9]  Para más información, vea *Use of Advertising and Facilitators in Adoptive Placements (El Uso de la Publicidad y los Facilitadores en las Colocaciones Adoptivas)*, solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/advertising.cfm

[10]  Para ver ejemplos de preguntas (en inglés) para hacerle a los padres adoptivos viables, vea el sitio web del American Pregnancy Association: http://americanpregnancy.org/adoption/guidelinechoosingfamily.html

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

## Consideraciones Legales en Ciertos Casos

Como se ha mencionado a lo largo de esta publicación, usted debe estar al tanto de las varias leyes Estatales que rigen los procesos de la adopción (vea recursos en inglés en https://www.childwelfare.gov/adoption/birth/for/legal.cfm). Además de leyes Estatales, hay también leyes Federales especiales relacionadas con la adopción y la raza/etnia:

- **Multi-Ethnic Placement Act (MEPA, por sus siglas en inglés).** MEPA, o la Ley de Colocación Multiétnica, prohíbe que las agencias de adopción recibiendo fondos Federales retrasen o nieguen la colocación de un niño en base a la raza, el color de piel o la nacionalidad del niño o de la familia adoptiva. Pese a los deseos de los padres biológicos, la agencia de adopción quizás no va a poder esperar hasta que haya una familia adoptiva viable de un grupo étnico solicitado para colocar al niño.

- **Indian Child Welfare Act (ICWA, por sus siglas en inglés).** Si un niño indígena americano o indígena de Alaska es colocado para adopción, ICWA, o la Ley Para el Bienestar del Niño Indígena, establece que los parientes del niño deben tener la primera oportunidad de adoptarlo. Si los parientes deciden no adoptarlo, entonces la ley da la oportunidad a los miembros de la Tribu, seguidos por los miembros de otras Tribus indígenas. Esta ley da poderes legales al tribunal de la Tribu para decidir los casos de adopción. Si usted o el padre del niño tiene herencia indígena americana o de Alaska, hable con un abogado de adopción que conozca estas leyes para saber cómo podrían ser aplicadas en su caso.

En la adopción por agencia, familias que están interesadas pueden solicitar adoptar a través de la agencia. Usted puede tener la oportunidad de revisar perfiles, cartas, fotos y/o videos para ayudarla a seleccionar padres potenciales para su hijo. De así desearlo, muchas agencias pueden coordinar una reunión para que pueda conocer a las familias adoptivas viables antes de tomar una decisión acerca de cuál prefiere para su hijo.

En la adopción independiente, hay muchas maneras por las cuales madres embarazadas pueden encontrar posibles padres adoptivos. A veces se enteran de familias interesadas en adoptar por medio de su abogado o doctor, su familia o sus amigos, o por medio de su comunidad espiritual. Algunas personas que quieren adoptar crean perfiles que aparecen en sitios web y en foros de los medios sociales como Facebook, o a veces ponen anuncios en periódicos locales. En ciertos Estados, este tipo de publicidad está restringida o es ilegal, pero en otros lugares es muy popular[11]. Una vez que haga contacto con una familia adoptiva potencial, un abogado de adopción puede ayudarle a proseguir.

- ***Tenga en cuenta:*** *Hoy en día, es mucho más fácil y rápido encontrar información acerca de padres adoptivos viables a causa de la Internet y los medios sociales. Sin embargo, éstos medios también crean oportunidades para la presión o coerción, el fraude y la explotación. Si decide usar la Internet para encontrar padres adoptivos potenciales, asegúrese de hacer muchas preguntas para evaluar si los proveedores de servicios son entidades que trabajan de una manera ética y que los servicios reflejan los mejores intereses suyos y se su hijo.*

Tanto en las adopciones por agencia como en las adopciones privadas/independientes, las familias adoptivas viables deben completar un proceso del estudio familiar. El propósito del estudio familiar es para asegurar que el hogar adoptivo es un hogar seguro y apropiado para el niño. Típicamente, un estudio familiar incluye entrevistas con los padres potenciales, visitas a la

---

[11]  Para más información, lea *Use of Advertising and Facilitators in Adoptive Placements (El Uso de la Publicidad y los Facilitadores en las Colocaciones Adoptivas)*, solo disponible en inglés https://www.childwelfare.gov/systemwide/laws_policies/statutes/advertising.cfm

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

casa y verificación de sus antecedentes e investigación de antecedentes criminales[12]. Hable con su consejero o abogado para obtener una copia del perfile y el estudio familiar de una familia adoptiva potencial.

## Manteniendo el Contacto con Su Hijo Después de la Adopción

Hoy en día, la mayoría de las adopciones domesticas de bebés incluyen un nivel de "apertura". La adopción abierta permite que los padres biológicos conozcan y tengan contacto con los padres adoptivos y posiblemente con el niño que ha sido adoptado. Después de la adopción, la madre biológica (y posiblemente el padre biológico y otros familiares) y la familia adoptiva pueden comunicarse a través de varios métodos, como las cartas, llamadas por teléfono, los medios sociales, correo electrónico, mensajes de texto, llamadas por video y/o visitas. En algunos casos, la agencia de adopción puede funcionar como intermediaria para pasar información entre las familias biológicas y adoptivas. El tipo de comunicación y su frecuencia depende de los deseos y las necesidades de las personas involucradas, y esto puede cambiar a lo largo del tiempo[13].

Las investigaciones indican que la apertura puede ser beneficiosa para los niños que han sido adoptados, como también para las madres biológicas. A través del contacto directo con miembros de su familia biológica, la apertura puede ayudar a su niño a aprender más sobre su historia personal, antecedentes familiares, información médica y las razones por su colocación. Como resultado, su hijo puede tener el beneficio de un fuerte sentido de identidad propia, autoestima y conexión. Además, las madres biológicas a menudo reportan un mayor sentido de control en una adopción abierta y también de consuelo al saber que su niño está sano y bien

cuidado. También se ha demostrado que muchas madres biológicas en adopciones abiertas tienden a ajustarse mejor a la situación después de la adopción[14].

Algunos padres biológicos sienten que preferirían no tener contacto con su hijo después de la adopción y pueden buscar una adopción "cerrada". En las adopciones cerradas, los padres biológicos y los padres adoptivos no se conocen en persona, aunque los padres adoptivos sí pueden recibir alguna información no específica (que no identifique al individuo) sobre los padres biológicos, como un expediente médico. Este tipo de adopción se está haciendo menos común, ya que los beneficios de la apertura están siendo reconocidos cada vez más. Además, se hace cada vez más difícil mantener una adopción cerrada a causa de los medios sociales, los cuales han facilitado el proceso de búsqueda entre miembros de familias biológicas y personas que han sido adoptadas.

Si decide hacer un plan de adopción, hable con su consejero de adopción o abogado especializado en adopción sobre cuánto contacto desea tener con los padres adoptivos de su hijo y con su hijo. Usted y los padres adoptivos potenciales deben ponerse de acuerdo por adelantado sobre cómo se van a contactar, con cuánta frecuencia, quién estará involucrado y de qué manera se puede cambiar el acuerdo en el futuro. A veces, esto se formaliza por escrito en un acuerdo de comunicación/contacto postadoptivo[15].

- *Tenga en cuenta: Los acuerdos de contacto postadoptivo pueden ser herramientas útiles para establecer expectativas comunes y deben ser presentados antes de finalizar la adopción. Sin embargo, tales acuerdos pueden no ser ejecutables por disposición legal si los padres adoptivos o biológicos cambian de opinión y deciden cortar comunicación.*

---

[12] Para más información, lea *El Proceso de Estudio de Hogar Para la Adopción (The Adoption Home Study Process)* (https://www.childwelfare.gov/pubs/f_homstu.cfm) (versión en español: https://www.childwelfare.gov/pubs/proceso.cfm).

[13] Para más información acerca de las adopciones abiertas, vea *Open Adoption: Could Open Adoption Be the Best Choice for You and Your Baby? (La Adopción Abierta: ¿Podría Ser la Mejor Opción Para Usted y Su Bebé?)* en https://www.childwelfare.gov/pubs/openadoption.cfm y también *Openness in Adoption: Building Relationships Between Adoptive and Birth Families (La Apertura en la Adopción: Construyendo Relaciones Entre Familias Adoptivas y Biológicas)* en https://www.childwelfare.gov/pubs/f_openadopt.cfm, ambos solo disponible en inglés.

[14] Para leer un resumen de las investigaciones sobre la apertura, vea *Openness in Adoption: From Secrecy and Stigma to Knowledge and Connections (La Apertura en la Adopción: Del Secretismo y el Estigma al Conocimiento y las Conexiones)*, solo disponible en inglés, accesible en el sitio web del Donaldson Adoption Institute: http://adoptioninstitute.org/publications/openness-in-adoption-from-secrecy-and-stigma-to-knowledge-and-connections/

[15] Para más información, vea *Postadoption Contact Agreements Between Birth and Adoptive Families (Acuerdos de Contacto Postadoptivo Entre Familias Biológicas y Adoptivas)*, solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/cooperative.cfm

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

## Refugios Seguros

Muchos Estados tienen leyes de refugio seguro (conocidas en inglés como "safe haven laws") que permiten que las madres dejen a sus bebés recién nacidos en ciertos lugares, como hospitales, estaciones de policías y estaciones de bomberos. Dejar a un bebé en un lugar seguro donde alguien lo pueda cuidar hasta que se le encuentre un hogar permanente es una mejor opción que dejarlo en un lugar desprotegido. Sin embargo, hay varias desventajas de no trabajar directamente con un profesional de la adopción. El niño puede crecer con poca o sin ninguna información sobre su familia o su historial médico y, si desea hacerlo, sería improbable que pueda encontrar a sus padres biológicos en el futuro. Las madres que dejan a sus hijos en refugios seguros pueden tener menos oportunidades de recibir consejería. Para más información, vea *Infant Safe Haven Laws* (*Leyes de Refugios Seguros Infantiles*), solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/safehaven.cfm

## Cuidándose a Sí Misma

Durante y después de un embarazó no planificado o un embarazo en crisis, usted se podría sentir ansiosa, estresada, agobiada y muchas emociones más. Asegúrese de obtener atención médica adecuada para su bebé y para usted misma. La consejería durante su embarazo, particularmente con un profesional capacitado y neutral, puede ayudarla a enfrentar y manejar sus emociones y a tener la fortaleza de tomar buenas decisiones para usted y para el bebé. La consejería después del parto puede ayudarla a aceptar y a vivir con cualquier decisión que tome. Algunas agencias autorizadas de adopción le proveerán servicios de consejería después de la adopción por cuanto tiempo los necesite. En las adopciones independientes, la mayoría de los Estados permiten (y algunos Estados requieren) que los padres adoptivos paguen por los servicios de consejería que necesite la madre biológica (con algunos límites de tiempo)[16].

El dolor y el sentimiento de pérdida son reacciones comunes para los padres biológicos que acaban de colocar a su hijo en adopción. Algunos padres biológicos también se sienten culpables o enojados[17]. Sentimientos fuertes de dolor y arrepentimiento pueden ocurrir muchos años después de la adopción. Es importante aceptar estos sentimientos y reconocer que son normales. Años después de la adopción, usted o su hijo podrían intentar contactarse entre sí. El proceso de búsqueda y reunión puede ser una experiencia llena de emociones intensas, la cual podría beneficiarse del apoyo profesional[18].

Sea cual sea el nivel de contacto que tiene con su hijo, la consejería la puede ayudar. La consejería individualizada y/o los grupos de apoyo con otras madres biológicas pueden ayudarla a aceptar su plan de adopción, resolver su dolor, sentirse bien de sí misma y planear para su futuro. Seguir adelante no quiere decir que olvidará a su bebé, solo que está dispuesta a aceptar e integrar la adopción como parte de su vida.

## Recursos Para Más Información
### Sitios Web y Blogs/Ciberdiarios

Child Welfare Information Gateway

- Directorio Nacional del Cuidado Temporal y la Adopción (National Foster Care & Adoption Directory Search), disponible en inglés y español: https://www.childwelfare.gov/nfcad/ (versión en español: https://www.childwelfare.gov/nfcad/index.cfm?event=viewNamSearchForm)

---

[16] Para más información, vea *Regulation of Private Domestic Adoption Expenses* (*La Regulación de los Costos de Adopciones Domesticas Privadas*), solo disponible en inglés: https://www.childwelfare.gov/systemwide/laws_policies/statutes/expenses.cfm

[17] Para más información, vea *El Impacto de la Adopción en los Padres Biológicos* (*Impact of Adoption on Birth Parents*) (https://www.childwelfare.gov/pubs/f_impact/index.cfm) (versión en español: https://www.childwelfare.gov/pubs/impactobio/index.cfm).

[18] Para más información acerca de las búsquedas y reuniones, visite la siguiente página web (en inglés): https://www.childwelfare.gov/adoption/search/. Lea también *Buscando a Parientes Biológicos* (*Searching for Birth Relatives*) (https://www.childwelfare.gov/pubs/f_search.cfm) (versión en español: https://www.childwelfare.gov/pubs/buscando/index.cfm).

Esta publicación forma parte del dominio público y puede ser descargada, reproducida y distribuida sin autorización. Al hacerlo, por favor dé crédito a Child Welfare Information Gateway. Disponible en línea: https://www.childwelfare.gov/pubs/esta.cfm

# EXHIBIT B

- For Expectant Parents Considering Adoption and Birth Parents (Para Futuros Padres Considerando la Adopción y Padres Biológicos), solo disponible en inglés: https://childwelfare.gov/adoption/birth/for/index.cfm
- Glossary of Adoption and Child Welfare Terms, solo disponible en inglés: https://www.childwelfare.gov/admin/glossary/index.cfm
- Laws Related to Adoption (Leyes Relacionadas con la Adopción), solo disponible en inglés: https://www.childwelfare.gov/adoption/laws/
- Términos del Bienestar de Menores, disponible en inglés y español: https://www.childwelfare.gov/glossary/terms_spanish_english_a.cfm

Adoption Together Birthparents Blog
http://www.birthparentblog.com/

America Adopts
http://www.americaadopts.com/pregnant/

American Adoption Congress
http://www.americanadoptioncongress.org/index.php

American Pregnancy Association
http://americanpregnancy.org/adoption/adoptionfaq.html

Concerned United Birthparents (CUB)
http://www.cubirthparents.org

Insight: Open Adoption Resources and Support
http://openadoptioninsight.org/expectant-parents/

National Council for Adoption, IChooseAdoption.org
http://ichooseadoption.org/

Open Adoption Bloggers
http://openadoptionbloggers.com

## Publicaciones

Child Welfare Information Gateway. (2013). *El impacto de la adopción en los padres biológicos (Impact of adoption on birth parents).* Disponible en: https://www.childwelfare.gov/pubs/impactobio/index.cfm

Child Welfare Information Gateway. (2013). *Openness in adoption: Building relationships between adoptive and birth families.* Disponible en: https://www.childwelfare.gov/pubs/f_openadopt.cfm

Child Welfare Information Gateway y Office of Population Affairs. (2013). *Open adoption: Could open adoption be the best choice for you and your baby?* Disponible en: https://www.childwelfare.gov/pubs/openadoption.cfm

Caldwell, M. (2008). *So I was thinking about adoption… Considering your choices.* American Carriage House Publishing.

Fessler, A. (2006). *The girls who went away: The hidden history of women who surrendered children for adoption in the decades before Roe v. Wade.* Penguin Press.

Martin Mason, M. (1995). *Out of the shadows: Birthfathers' stories.* O.J. Howard Publishing.

Siegel, D.H., & Smith, S.L. (2012). *Openness in adoption: From secrecy and stigma to knowledge and connections.* Disponible en: http://adoptioninstitute.org/publications/openness-in-adoption-from-secrecy-and-stigma-to-knowledge-and-connections/

Smith, S. (2007). *Safeguarding the rights and well-being of birthparents in the adoption process.* Disponible en: http://adoptioninstitute.org/publications/safeguarding-the-rights-and-well-being-of-birthparents-in-the-adoption-process/

## Cita sugerida:

Child Welfare Information Gateway. (2014). *¿Está embarazada y pensando en la adopción?* Washington, DC: U.S. Department of Health and Human Services, Children's Bureau.



U.S. Department of Health and Human Services
Administration for Children and Families
Administration on Children, Youth and Families
Children's Bureau



