

# Dobbs v. Jackson Women's Health Organization U.S. Supreme Court Decision: Impact on Title X Program

QUESTIONS & ANSWERS FOR TITLE X RECIPIENTS

**June 2022**

**HHS Office of Population Affairs**
Web: opa.hhs.gov | Email: opa@hhs.gov
Twitter: @HHSPopAffairs | YouTube: HHSOfficeofPopulationAffairs

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

**General Questions**

1. **If a Title X recipient begins to see an influx of clients following the Supreme Court decision in Dobbs, et al. v. Jackson Women's Health Organization, is the Title X recipient allowed to reallocate funds to account for the change in client volume?**

   Title X recipients can submit a request for a budget revision via Grant Solutions at any time if a need arises to reallocate more than 10% of the total budget across approved budget categories. The request should contain documentation explaining the need for the budget revision along with a revised budget (SF-424A) and revised budget narrative. This should be submitted through the GrantSolutions amendment module to begin the review and approval process. The process may take up to 30 days. If approved the grants management officer will issue a notice of award with the budget revision. Guidance on how to submit a budget revision amendment in GrantSolutions can be found on [MAX.gov](MAX.gov). Recipients should discuss any potential reallocation of funds with their respective project officer and grants management specialist.

2. **Will OPA be providing Title X recipients with additional funding to address the potential influx in clients that may result from Supreme Court decision in *Dobbs v. Jackson Women's Health Organization*?**

   OPA is working to secure additional funding, but unfortunately does not have additional funding available at this time to provide to Title X recipients who may experience an influx in clients following the *Dobbs* Supreme Court decision. If additional funds were to become available at any point, OPA will share the information with all Title X recipients.

3. **Can Title X recipients expand services to a new community or a new state if the need for services changes?**

   The Title X program is not a state-based formula grant program, therefore individual Title X project service areas are not limited to individual states. Title X recipients interested in expanding their service area to include new communities, either within or across states, would need to request approval from OPA and GAM for a change in scope of their projects. Requests must be submitted via a change in scope amendment which may take up to 30 days for review. Approval is communicated via a notice of award issued by the grants management officer. Costs may be disallowed if a recipient begins implementing a change in scope prior to its approval.

   A change in scope occurs when the recipient proposes changes to project's objectives, aims, or purposes identified in the approved application, such as changing the service area; applying a new technology; adding or eliminating a service delivery site; or making budget changes that cause a project to change substantially from what was originally approved. The [Title X Family Planning Change in Scope Worksheet](Title X Family Planning Change in Scope Worksheet) helps identify elements for clinic closures, new clinics, or other programmatic changes which may require a request for a change in scope to the current

2

Case 3:23-cv-00384-TRM-JEM    Document 1-6    Filed 10/24/23    Page 2 of 9    PageID #: 162

Docket A-23-38
Attachment I
Page 2 of 9

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

Title X family planning project. Recipients are not required to use the worksheet, but can include the completed worksheet with their amendment submission in Grant Solutions.

4. **Can Title X recipients begin to limit receipt of services to only residents from their state if the influx of clients from other states becomes too burdensome?**

   No, Title X recipients cannot limit receipt of services to only residents from their states. Title X recipients are required to provide services without the imposition of any durational residency requirement or a requirement that the client be referred by a physician. (42 CFR § 59.5(b)(5))

5. **Can Title X recipients remove pregnancy testing and counseling from their Title X projects?**

   Title X recipients are required to provide a broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services (**including pregnancy testing and counseling**, assistance to achieve pregnancy, basic infertility services, sexually transmitted infection (STI) services, preconception health services, and adolescent-friendly health services). If an organization offers only a single method of family planning, it may participate as part of a project as long as the entire project offers a broad range of acceptable and effective medically approved family planning methods and services. (42 CFR § 59.5(a)(1))

   **As a result of the requirement in § 59.5(a)(1), Title X recipients cannot completely remove pregnancy testing and counseling services from their Title X projects.** Title X service sites are expected to provide most, if not all, of acceptable and effective medically approved family planning methods and services on site and to detail the referral process for family planning methods and services that are unavailable on-site. However, as long as the entire Title X project offers a broad range of acceptable and effective medically approved family planning methods and services, including pregnancy testing and counseling, not all individual service sites participating in the project must offer the broad range of methods and services.

   Furthermore, Title X recipients are required to ensure that Title X service sites that are unable to provide clients with access to a broad range of acceptable and effective medically approved family planning methods and services, must be able to provide a prescription to the client for their method of choice or referrals to another provider, as requested. (42 CFR § 59.5(a)(1))

6. **Given the Supreme Court decision in *Dobbs v. Jackson Women's Health Organization*, can Title X recipients still provide emergency contraception to clients?**

   Yes, Title X recipients are required to provide a broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services (including pregnancy testing and counseling, assistance to achieve pregnancy, basic infertility services, sexually transmitted infection (STI) services, preconception health services, and adolescent-friendly health services). (42 CFR § 59.5(a)(1))

3

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

Title X recipients may still consider emergency contraception as part of the required broad range of methods and services because it is a medically approved method of contraception. "Emergency contraception is a [FDA-approved] method of birth control you can use if you had sex without using birth control or if your birth control method did not work correctly. Emergency contraception pills are different from the abortion pill. If you are already pregnant, emergency contraception pills do not stop or harm your pregnancy." (womenshealth.gov) Click here for more information on emergency contraception.

7. **Who should Title X recipients contact with questions about the impact of the U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*?**

   For questions related to the impact of *Dobbs* on their Title X projects, Title X recipients should contact their respective OPA project officers; in addition, they should refer to the Title X Program Handbook for further guidance on all Title X recipient expectations. For questions about *Dobbs* outside the scope of their Title X projects, recipients should contact their private counsel.

**Counseling and Referral Questions**

8. **Given the Supreme Court decision in *Dobbs v. Jackson Women's Health Organization*, are Title X recipients still allowed to provide counseling to clients about abortion?**

   Not only are Title X recipients ***allowed***, but per the 2021 Title X rule, Title X recipients are ***required*** to offer pregnant clients the opportunity to be provided **information and counseling** regarding each of the following options: prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. If requested to provide such information and counseling, provide neutral, factual information and nondirective counseling on each of the options, **and referral upon request**, except with respect to any option(s) about which the pregnant client indicates they do not wish to receive such information and counseling. (42 CFR § 59.5(a)(5))

9. **Given the Supreme Court decision *in Dobbs v. Jackson Women's Health Organization*, are Title X recipients still allowed to provide clients with counseling and a referral for an abortion?**

   Not only are Title X recipients ***allowed***, but per the 2021 Title X rule, Title X recipients are ***required*** to offer pregnant clients the opportunity to be provided **information and counseling** regarding each of the following options: prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. If requested to provide such information and counseling, provide neutral, factual information and nondirective counseling on each of the options, **and referral upon request**, except with respect to any option(s) about which the pregnant client indicates they do not wish to receive such information and counseling. (42 CFR § 59.5(a)(5))

   However, there are limitations on what abortion counseling and referral is permissible under the statute. A Title X project may not provide pregnancy options counseling which promotes abortion or encourages persons to obtain abortion, although the project may provide patients with complete factual information about all medical options and the accompanying risks and

4

Case 3:23-cv-00384-TRM-JEM   Document 1-6   Filed 10/24/23   Page 4 of 9   PageID #: 164

Docket A-23-38
Attachment 1
Page 4 of 9

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

benefits. And, while a Title X project may provide a referral for abortion, which may include providing a patient with the name, address, telephone number, and other relevant factual information (such as whether the provider accepts Medicaid, charges, etc.) about an abortion provider, the project may not take further affirmative action (such as negotiating a fee reduction, making an appointment, providing transportation) to secure abortion services for the patient. (65 Fed. Reg. 41281 (July 3, 2000))

Where a referral to another provider who might perform an abortion is medically indicated because of the patient's condition or the condition of the fetus (such as where the woman's life would be endangered), such a referral by a Title X project is not prohibited by section 1008 and is required by 42 CFR § 59.5(b)(1). The limitations on referrals do not apply in cases in which a referral is made for medical indications. (65 Fed. Reg. 41281 (July 3, 2000)).

10. **Can Title X grantees accept referrals from clients living in a different state from where the service site is located?**

    Yes, Title X recipients can provide services for clients living outside of the community and state that the service site is located in. Title X recipients are required to provide services without the imposition of any durational residency requirement. (42 CFR § 59.5(b)(5))

11. **Can Title X recipients make referrals for a client to a provider in a different state?**

    There are no geographic limits for Title X recipients making referrals for their clients.

    Title X recipients are required to provide for coordination and use of referrals and linkages with primary healthcare providers, other providers of healthcare services, local health and welfare departments, hospitals, voluntary agencies, and health services projects supported by other federal programs, **who are in close physical proximity to the Title X site, _when feasible_,** in order to promote access to services and provide a seamless continuum of care. (42 CFR § 59.5(b)(8))

    Title X recipients have flexibility to refer clients for services across state lines if necessary.

12. **Can Title X recipients provide pregnancy counseling via telehealth?**

    Yes, Title X recipients are required to provide for medical services related to family planning (including consultation by a clinical services provider, examination, prescription and continuing supervision, laboratory examination, contraceptive supplies), **in person or via telehealth**, and necessary referral to other medical facilities when medically indicated, and provide for the effective usage of contraceptive devices and practices. (42 CFR § 59.5(b)(1))

13. **When providing clients with a referral for an abortion, are Title X recipients allowed to take any further steps to help clients secure an appointment?**

    While a Title X project may provide a referral for abortion, which may include providing a patient with the name, address, telephone number, and other relevant factual information (such as whether the provider accepts Medicaid, charges, etc.) about an abortion provider, the

5

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

project may not take further affirmative action (such as negotiating a fee reduction, making an appointment, providing transportation) to secure abortion services for the patient. (65 Fed. Reg. 41281 (July 3, 2000))

Where a referral to another provider who might perform an abortion is medically indicated because of the patient's condition or the condition of the fetus (such as where the woman's life would be endangered), such a referral by a Title X project is not prohibited by section 1008 and is required by 42 CFR § 59.5(b)(1). The limitations on referrals do not apply in cases in which a referral is made for medical indications. (65 Fed. Reg. 41281 (July 3, 2000)).

**Prohibition of Abortion Questions**

**14. Can Title X projects provide abortion services for clients now in need of such services?**

No, Title X recipients are not allowed to provide abortion as a method of family planning as part of the Title X project. (Section 1008, PHS Act; Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 444 (2022); 42 CFR § 59.5(a)(5))

**15. Are Title X projects allowed to provide medication abortion pills for clients now in need of such services?**

No, Title X recipients are not allowed to provide abortion as a method of family planning as part of the Title X project. (Section 1008, PHS Act; Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 444 (2022); 42 CFR § 59.5(a)(5))

**16. What is the Title X program's requirement on abortion as a method of family planning and abortion counseling and referral?**

Title X recipients are not allowed to provide abortion as a method of family planning as part of the Title X project. (Section 1008, PHS Act; Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49, 444 (2022); 42 CFR § 59.5(a)(5))

Title X recipients are required to offer pregnant clients the opportunity to be provided information and counseling regarding each of the following options: prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. If requested to provide such information and counseling, provide neutral, factual information and nondirective counseling on each of the options, and referral upon request, except with respect to any option(s) about which the pregnant client indicates they do not wish to receive such information and counseling. (42 CFR § 59.5(a)(5))

Furthermore, Title X recipients are prohibited from providing services that directly facilitate the use of abortion as a method of family planning, such as providing transportation for an abortion, explaining and obtaining signed abortion consent forms from clients interested in abortions, negotiating a reduction in fees for an abortion, and scheduling or arranging for the performance of an abortion, promoting or advocating abortion within Title X program activities, or failing to

**6**

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

preserve sufficient separation between Title X program activities and abortion-related activities. (65 Fed. Reg. 41281 (July 3, 2000))

**17. What is considered "sufficient separation" between Title X program activities and abortion-related activities?**

Title X recipients are required to ensure that non-Title X abortion activities are separate and distinct from Title X project activities. Where recipients conduct abortion activities that are not part of the Title X project and would not be permissible if they were, the recipient must ensure that the Title X-supported project is separate and distinguishable from those other activities.

What must be looked at is whether the abortion element in a program of family planning services is so large and so intimately related to all aspects of the program as to make it difficult or impossible to separate the eligible and non-eligible items of cost. The Title X project is the set of activities the recipient agreed to perform in the relevant grant documents as a condition of receiving Title X funds. A grant applicant may include both project and non-project activities in its grant application, and, so long as these are properly distinguished from each other and prohibited activities are not reflected in the amount of the total approved budget, no problem is created.

Separation of Title X from abortion activities does not require separate recipients or even a separate health facility, but separate bookkeeping entries alone will not satisfy the spirit of the law. Mere technical allocation of funds, attributing federal dollars to non-abortion activities, is not a legally supportable avoidance of section 1008. Certain kinds of shared facilities are permissible, so long as it is possible to distinguish between the Title X supported activities and non-Title X abortion-related activities:
   a. a common waiting room is permissible, as long as the costs properly pro-rated;
   b. common staff is permissible, so long as salaries are properly allocated, and all abortion related activities of the staff members are performed in a program which is entirely separate from the Title X project;
   c. a hospital offering abortions for family planning purposes and also housing a Title X project is permissible, as long as the abortion activities are sufficiently separate from the Title X project; and
   d. maintenance of a single file system for abortion and family planning patients is permissible, so long as costs are properly allocated. (65 Fed. Reg. 41281, 41282 (July 3, 2000)

**18. Can Title X recipients use Title X funds to fund speakers to present in opposition to the Supreme Court decision in *Dobbs v. Jackson Women's Health Organization*?**

No, Title X recipients are prohibited from promoting or encouraging the use of abortion as a method of family planning through advocacy activities such as providing speakers to debate in opposition to anti-abortion speakers, bringing legal action to liberalize statutes relating to abortion, or producing and/or showing films that encourage or promote a favorable attitude toward abortion as a method of family planning. Films that present only neutral, factual information about abortion are permissible. A Title X project may be a dues paying participant

7

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

in a national abortion advocacy organization, so long as there are other legitimate program-related reasons for the affiliation (such as access to certain information or data useful to the Title X project). A Title X project may also discuss abortion as an available alternative when a family planning method fails in a discussion of relative risks of various methods of contraception. (65 Fed. Reg. 41281, 41282 (July 3, 2000))

### 19. How can Title X projects support clients with positive pregnancy tests and are experiencing early pregnancy symptoms such as bleeding, nausea and vomiting, or pain?

For clients experiencing early pregnancy symptoms before the client realizes they are pregnant, and/or immediately following a positive pregnancy test, Title X providers should assess the client and provide clinical care to address their immediate needs.

Subsequently, as detailed in 42 CFR § 59.5(a)(5), providers must offer pregnant clients the opportunity to be provided information and counseling regarding the following options: prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination. If requested to provide such information and counseling, providers must provide neutral, factual information and nondirective counseling on each of the options, and referral upon request, except with respect to any option(s) about which the pregnant client indicates they do not wish to receive such information and counseling.

Title X recipients are required to provide a broad range of acceptable and effective medically approved family planning methods (including natural family planning methods) and services (including pregnancy testing and counseling, assistance to achieve pregnancy, basic infertility services, sexually transmitted infection (STI) services, preconception health services, and adolescent-friendly health services). (42 CFR § 59.5(a)(1))

Title X recipients are required to provide services in a manner that ensures equitable and quality service delivery consistent with nationally recognized standards of care. (42 CFR § 59.5(a)(3))

In addition, Title X recipients are required to provide for medical services related to family planning (including consultation by a clinical services provider, examination, prescription and continuing supervision, laboratory examination, contraceptive supplies), in person or via telehealth, and necessary referral to other medical facilities when medically indicated, and provide for the effective usage of contraceptive devices and practices. (42 CFR § 59.5(b)(1))

### Confidentiality Questions

### 20. What is Title X's requirement on maintaining client confidentiality?

As detailed in 42 CFR § 59.10(a), the Title X program requires that all information as to personal facts and circumstances obtained by the project staff about individuals receiving services must be held confidential and must not be disclosed without the individual's

8

Case 3:23-cv-00384-TRM-JEM   Document 1-6   Filed 10/24/23   Page 8 of 9   PageID #: 168

Docket A-23-38
Attachment
Page 8 of 9

The questions and answers included below aim to provide guidance and clarification from OPA for Title X recipients regarding the impact of the U.S. Supreme Court decision in *Dobbs v. Jackson Women's Health Organization* on the Title X Program.

documented consent, except as may be necessary to provide services to the patient or as required by law, with appropriate safeguards for confidentiality. Otherwise, information may be disclosed only in summary, statistical, or other form that does not identify particular individuals. Reasonable efforts to collect charges without jeopardizing client confidentiality must be made. Recipients must inform the client of any potential for disclosure of their confidential health information to policyholders where the policyholder is someone other than the client. (42 CFR § 59.10(a))

9

Case 3:23-cv-00384-TRM-JEM   Document 1-6   Filed 10/24/23   Page 9 of 9   PageID #: 169

Docket A-23-38
Attachment 1
Page 9 of 9